AO 91 (Rev. 5/85) Criminal Complaint  AUSA DISPOTO

FILED by _JM_ D.C.

# United States District Court

MAR 2 6 2010

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| UNITED STATES OF AMERICA | **CRIMINAL COMPLAINT** |
| vs. | |
| VERONICA MARTINEZ, | CASE NUMBER: 10-8086-JMH |
| Defendant. | |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

On or about June 1, 2009 through March 23, 2010, the defendant, VERONICA MARTINEZ, in Palm Beach County, in the Southern District of Florida, and elsewhere, did knowingly provide and obtain the labor and services of a person, that is E.M. and L.M., by means of force and threats of force to that person and another person, and by means of the abuse and threatened abuse of law or the legal process, in violation of Title 18, United States Code, Section 1589(a).

Further, on or about June 1, 2009 through March 23, 2010, the defendant, VERONICA MARTINEZ, in Palm Beach County, in the Southern District of Florida, and elsewhere, did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide and obtain by any means a person, that is E.M. and L.M., knowing that force, fraud and coercion will be used to cause the person to engange in a commerical sex act, in violation of Title 18, United States Code, Section ~~1951(a)(1)~~. *JMH* 1591(a)(1)

I further state that I am a <u>Special Agent with the Federal Bureau of Investigation</u>, and that this Complaint is based on the following facts:

Please see attached Affidavit

Continued on the attached and made a part hereof.

_____
Wende Bardfield, Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence,
upon my finding of probable cause.

March 26, 2010                                    at      West Palm Beach, Florida
Date                                                          City and State

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE                _____
                                                                        Signature of Judicial Officer

# **AFFIDAVIT**

Your affiant, Wende E. Bardfeld, being duly sworn, does hereby depose and state as follows:

1.      I am a Special Agent with the United States Department of Justice, Federal Bureau of Investigation (FBI), currently assigned to the Miami Division, Palm Beach County Resident Agency. I have been employed as a Special Agent with the FBI since January 2001. I am currently assigned to the Palm Beach County Human Trafficking Task Force. I have received specialized training, and have participated in numerous investigations, involving criminal gang enterprises, drug trafficking, illegal firearms trafficking, human trafficking and Racketeer Influenced and Corrupt Organizations (R.I.C.O.) cases. Among my responsibilities as a Special Agent are investigating civil rights crimes, particularly offenses associated with human trafficking, to include violation of the laws related to peonage, slavery and involuntary servitude.

2.      The facts set forth in this affidavit are based in part on my personal knowledge, information obtained throughout this investigation by others, including other law enforcement officers, my review of documents and records related to this investigation, and information gained from my training and experience. I am familiar with the facts and circumstances of this investigation. This affidavit does not contain all the information known to me about this case. Rather, it contains only that information necessary to support a finding of probable cause for the issuance of a criminal complaint charging VERONICA

1

MARTINEZ (hereinafter "MARTINEZ") with forced labor, in violation of Title 18, United States Code, Section 1589, and sex trafficking, in violation of Title 18, United States Code, Sections 1591(a)(1).

## STATUTORY AUTHORITY

3. This investigation concerns violations of Title 18, United States Code, Sections 1589 and 1591(a)(1), relating to human trafficking by forced labor and sex trafficking.

    a. Title 18, United States Code, Section 1589 prohibits a person from knowingly providing or obtaining the labor or services of a person (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another; (3) by means of the abuse or threatened abuse of law or the legal process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

    b. Title 18, United States Code, Section 1591(a)(1) prohibits a person from knowingly recruiting, enticing, harboring, transporting, providing, or obtaining a person, in or affecting interstate commerce, knowing that means of force, threats of force, fraud, coercion or any combination of such means will be used to cause the person to engage in a commercial sex act.

2

## FACTUAL BACKGROUND

4. On March 22, 2010, the National Human Trafficking Resource Center received an anonymous call about suspicious activity taking place at a trailer home and bar located in West Palm Beach, Florida. The caller reported that two females were brought to the United States by an alien smuggler, known as a coyote, for the purpose of finding work. The caller stated that she believed that the women were forced to engage in commercial sex acts to pay off their smuggling debts to their coyote. The caller provided the address of the trailer home in West Palm Beach, Florida where she believed the women lived.

5. On or about March 23, 2010, FBI Special Agent Maria Llompart and I, along with other law enforcement officers, responded to the address provided by the anonymous caller. Upon arrival, I spoke with a female Honduran national, later identified as E.M. E.M. reported that she was smuggled into the United States from Honduras by a coyote in July 2009. She stated MARTINEZ orchestrated the smuggling venture for her and her sister, L.M., who was smuggled into the United States in the Spring 2009. MARTINEZ initially told the women that it would cost them $3,000 each to be smuggled into the United States.

6. Upon arriving in the United States, E.M was turned over to MARTINEZ in West Palm Beach. L.M. had been living at a residence in West Palm Beach upon her arrival in the United States several months earlier. MARTINEZ told E.M. and L.M. that they now owed her $12,000. MARTINEZ forced E.M. and L.M. to work at a nightclub to pay off their smuggling debt. She stated that the women had to dance, drink, and be fondled by the

customers at the nightclub. She also told the women that they had to engage in prostitution with the customer. MARTINEZ took all the money paid to E.M. and L.M. as payment towards their debt. She also told E.M. and L.M. that if they did not pay back the debt, their mother in Honduras would be harmed. MARTINEZ also threatened to take legal action in the United States of America to get them jailed or deported due to their illegal status.

7. From Wednesdays through Sundays, MARTINEZ took E.M. and L.M. to a nightclub called El Alacran to dance, drink and be fondled by the customers. The girls were paid by the customers per dance, and were forced to drink large amounts of alcohol throughout the night. If they refused, they would be punished by the management. At the end of the night, MARTINEZ picked up the girls and took them to a trailer home in Casa Del Monte where the women were forced to perform commercial sex acts with patrons from the bar. After El Alacran closed due to drug trafficking, the girls were taken to another nightclub called El Rancho. MARTINEZ forced both women to pay off their debt by dancing and prostituting themselves at El Rancho as they had done at El Alacran. Once again, MARTINEZ forced the women to turn over all monies as payment for their debt.

8. E.M. further reported to law enforcement that as she and her sister made payments for their smuggling debt, MARTINEZ provided them with a "receipt" for payment. Some of the "receipts" were bank deposits receipts that MARTINEZ gave the women after MARTINEZ deposited the monies in the bank. Other "receipts" were checks or savings account withdrawal slips that MARTINEZ used to handwrite notations regarding payments

4

made by the women. For example, on June 1, 2009, MARTINEZ provided L.M. with a deposit receipt from SunTrust Bank, account number 1000084559540. The receipt indicated a cash deposit of $200 had been made into the account on that day. On September 7, 2009, MARTINEZ provided L.M. with personal check #128 from the Sun Trust Bank Account of Jose T. Begas. E.M. reported that Jose T. Begas is MARTINEZ's boyfriend. In the "pay to the order" portion of the check, MARTINEZ wrote "ciento setentay cinco." In the dollar amount portion of the check, MARTINEZ wrote "175.00." Under the "pay to the order" portion of the check, MARTINEZ wrote L.M.'s name. MARTINEZ then signed the bottom portion of the check. On February 16, 2010, MARTINEZ provided E.M. with personal check # 138 from the SunTrust Bank of Jose T. Begas. In the "pay to the order" portion of the check, MARTINEZ wrote "Veronica Martinez." In the dollar amount portion of the check, MARTINEZ wrote "100.00." Under the "pay to the order" portion of the check, MARTINEZ wrote E.M.'s name. MARTINEZ wrote E.M.'s name again in the bottom left hand corner of the check. MARTINEZ then signed the bottom portion of the check.

9.  In November 2009, E.M. became pregnant by her boyfriend, Carlos Somarriba (hereinafter "Somarriba"). When MARTINEZ learned about the pregnancy, she instructed E.M. not to tell the management at El Rancho because they would not let her work there if they knew she was pregnant. MARTINEZ then took E.M. to a Miami-area abortion clinic to terminate the pregnancy. Erica refused and fled to Somarriba's residence where she currently resides. After she fled, E.M. continued to work at El Rancho to pay off her debt. When

5

management learned about the pregnancy in or around March 2010, they informed E.M. that she was prohibited from working as a dancer in the club. Sometime thereafter, MARTINEZ informed E.M. and L.M. that L.M. was now responsible for paying off E.M.'s debt.

10. After speaking with E.M., Special Agent Llompart and I responded to MARTINEZ's residence where we met L.M. L.M. stated that she was being held in that residence by MARTINEZ who forced her to work at El Rancho as a dancer and prostitute to pay off a smuggling debt. She also provided "receipts" that MARTINEZ used to memorialize payments made towards the debt. In total, L.M. and E.M. turned over to me 29 "receipts" dated June 1, 2009 to March 22, 2010 showing total payments of $4,813.

11. On March 23, 2010, MARTINEZ attempted to contact E.M. on Somarriba's cellular telephone. E.M. did not answer the call. MARTINEZ then left a message stating that E.M. still owed MARTINEZ "the money" and that she doesn't care how E.M. gets the money, even if she has to "rob a bank."

12. On March 25, 2010, MARTINEZ contacted Special Agent Llompart to inquire as to the location of E.M. and L.M. MARTINEZ stated that she is a friend of the women and that she knew that their mother in Honduras was "worried about them." Special Agent Llompart asked MARTINEZ if she had contacted the mother. MARTINEZ stated that she had not, but that Somarriba did. E.M. and L.M. have informed me that they have spoken with their mother in Honduras. The mother told the women that MARTINEZ contacted her prior to March 25, 2010 demanding the mother to pay off the women's debt.

13. Based upon the foregoing, I believe that there is probable cause to believe that from on or about June 1, 2009 through on or about March 23, 20101, in Palm Beach County, in the Southern District of Florida, and elsewhere, MARTINEZ did knowingly provide or obtain the labor or services of E.M. and L.M. by means of force and threats of force to them or another person, and by means of the abuse or threatened abuse of law or the legal process, in violation of Title 18, United States Code, Section 1589. Furthermore, I believe that there is probable cause to believe that MARTINEZ did knowingly harbor, transport, provide, and obtaining E.M. and L.M., in or affecting interstate commerce, knowing that means of force, threats of force, coercion and any combination of such means was used to cause the person to engage in a commercial sex act, in violation of Title 18, United States Code, Section 1591(a)(1).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

_____
WENDE E. BARDFELD, SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION

Sworn to and subscribed before me
this the 26th day of March, 2010

_____
JAMES HOPKINS
UNITED STATES MAGISTRATE JUDGE

7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 10-8086-JMH

UNITED STATES OF AMERICA

vs.

VERONICA MARTINEZ,

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? _____ Yes __X__ No

        Respectfully submitted,

        JEFFREY H. SLOMAN
        UNITED STATES ATTORNEY

BY:    s/Mark Dispoto
       MARK DISPOTO
       ASSISTANT UNITED STATES ATTORNEY
       Court Id No. A5501143
       500 East Broward Boulevard
       Ft. Lauderdale, Fl 33301
       TEL 954-660-5786
       FAX 954-356-7336